[Cite as *In re Adoption of J.F.M.*, 2016-Ohio-4823.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF: | : | |
| | : | CASE NO. CA2016-03-044 |
| J.F.M. | : | O P I N I O N 7/5/2016 |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. PA15-04-0068

Traci Combs-Valerio, 240 East State Street, Trenton, Ohio 45067, for petitioner-appellee

Eric L. Anderson, 3805 Edwards Road, Suite 550, Cincinnati, Ohio 45209, for respondent-appellant

**S. POWELL, P.J.**

{¶ 1} Appellant, the biological father of J.F.M., appeals the decision of the Butler County Court of Common Pleas, Probate Division, finding that his consent was not required in the adoption of J.F.M. by her stepfather. For the reasons detailed below, we affirm.

{¶ 2} Father and Mother divorced in 2002. Since that time, the parties have engaged in protracted litigation involving multiple aspects of the custody and support orders. Both Mother and Father have remarried different partners. This case involves Mother's new

husband, who petitioned for adoption.

{¶ 3} The record reflects that Father has a strained relationship with his older daughter, B.M.M., and that has been one issue relevant to the reassessment of parenting time. In 2010, visitation between Father and B.M.M. was suspended. In 2012, that visitation was reinstated with court-ordered counseling. The counseling proved unsuccessful and Mother and Father both filed new motions to modify the parenting time and support orders.

{¶ 4} On January 28, 2014, the parties entered into an agreement that relieved Father of all financial obligations related to the minor children, including the payment of child support and the requirement to maintain health insurance coverage for the children. In addition, the agreed entry stated:

> The parties agreed and it is the order of the court that Father shall have no parenting time with the minor children. Father shall have no contact with Mother, the minor children, Mother's husband and their other children. Mother is to have no contact with Father, Father's wife or Father's other children.

{¶ 5} There is no dispute that Father has not provided more than de minimis contact with the children since the date of that agreement. On April 10, 2015, more than one year after the agreement, stepfather petitioned the court for an order of adoption for both B.M.M. and J.F.M.[1]

{¶ 6} The probate court held a hearing on stepfather's adoption petition, during which evidence was presented regarding the children's best interest and whether Father's consent was required to adopt the children. Following the hearing, the probate court took the matter under advisement, and subsequently entered a decision granting stepfather's petition to adopt the children. As part of that decision, the probate court found Father's consent to the adoption was unnecessary pursuant to R.C. 3107.07(A). Father now appeals the decision of

---

1. This appeal only involved J.F.M., as B.M.M. had reached the age of 18 by the time the final order was docketed.

the probate court, raising one assignment of error for review.

{¶ 7} THE TRIAL COURT ERRED WHEN IT FOUND THAT THE PETITIONER-APPELLEE PROVED, BY CLEAR AND CONVINCING EVIDENCE THAT THE RESPONDENT-APPELLANT HAD FAILED, WITHOUT JUSTIFIABLE CAUSE, TO SUPPORT THE MINOR CHILD AND/OR CONTACT THE MINOR CHILD FOR THE REQUISITE ONE YEAR PERIOD PRIOR TO THE FILING OF THE PETITION FOR ADOPTION.

{¶ 8} In his single assignment of error, Father argues the probate court erred by finding his consent to adoption was unnecessary as provided in R.C. 3107.07(A). Specifically, Father claims the probate court erred by finding there was no justifiable cause for his failure to maintain contact or provide child support payments after entering into the relevant agreement relieving him of his financial obligations and including the "no contact" language. We disagree.

{¶ 9} The right of natural parents to the care and custody of their child is one of the most precious and fundamental in law. *In re C.M.F.*, 12th Dist. Butler Nos. CA2013-06-090 and CA2013-06-091, 2013-Ohio-4719, ¶ 8. An adoption, however, permanently terminates the parental rights of a natural parent. *In re L.C.W.*, 12th Dist. Butler No. CA2014-08-169, 2015-Ohio-61, ¶ 10. Therefore, "[b]ecause adoption terminates these rights, Ohio law requires parental consent to an adoption unless a specific statutory exemption exists." *In re A.N.B.*, 12th Dist. Preble No. CA2012-04-006, 2012-Ohio-3880, ¶ 5.

{¶ 10} R.C. 3107.07(A) provides an exception to the general parental consent requirement. As pertinent here, pursuant to that statute, consent to an adoption is not required where:

> A parent of a minor, when it is alleged in the adoption petition
> and the court, after proper service of notice and hearing, finds by
> clear and convincing evidence that the parent has failed without

- 3 -

justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

{¶ 11} When a petitioner for adoption alleges that a parent's consent is not required based on a failure to communicate or a failure to provide support, the burden is on the petitioner to establish by clear and convincing evidence both that the parent: (1) failed to communicate or provide support, and (2) that failure was without justifiable cause. *In re Adoption of Holcomb*, 18 Ohio St.3d 361 (1985), paragraph four of the syllabus; *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, ¶ 22. In other words, the petitioner must first establish that in the year preceding the petition, the parent failed to communicate or support the children. *In re C.M.F.* at ¶ 10; *In re A.N.B.* at ¶ 8. Once the petitioner has established this failure, the opposing parent must show some facially justifiable cause for such failure. *In re L.C.W.* at ¶ 12. The burden of proof, however, remains with the petitioner. *Id.*

{¶ 12} As previously noted, the parties do not dispute that Father has not provided more than de minimis contact with J.F.M. for at least one year immediately preceding the filing of the adoption petition. However, Father argues that justifiable cause exists because of the agreed entry specifying "no contact" with the children. In so doing, Father references several cases, such as *In re Adoption of Bryan W.*, where the Sixth District Court of Appeals held that a natural mother's failure to communicate with her son was justifiable because the probate court's order prohibited her from having any contact or communication with her child. *Id.*, 6th Dist. Huron No. H-96-039, 1997 WL 22468, *3 (May 2, 1997); *In re Adoption of M.F.*, 9th Dist. Summit No. 27166, 2014-Ohio-3801, ¶ 21.

{¶ 13} Based on our review of the evidence, we agree with the decision of the probate

court. This case is unlike the cases finding justifiable cause based on a "no contact" order. Here, although it is true that the agreed entry did include language specifying "no contact" with the children, this was an agreement that Father voluntarily entered into and even acknowledged that the order was his idea:

Q. Did you consent to no longer pay child support?

A. Yes.

Q. And you consented to having no contact?

A. Yes.

Q. With the children, mother and pretty much anyone in the family. Is that correct?

A. Yes.

* * *

Q. Did you sign this voluntarily or did someone force you?

A. I signed it.

Q. Voluntarily?

A. Yes.

Q. Did anyone threaten you to get you to sign that agreement?

A. Nope.

Q. Whose idea was it to terminate parenting time between you and the girls?

A. It was mine.

Q. And how did that come about? Who did you tell that to?

A. I basically said it right in open court.

Unlike those cases finding justifiable cause based on the existence of a "no contact" court order, this matter involved Father's own decision to terminate contact with the children.

{¶ 14} Furthermore, we also note that the relevant "no contact" order contained in the

agreed entry could have been modified. If Father had, at any point during the relevant period of time, wished to regain contact with his daughters then he could have requested to do so by petitioning the court, as he had already done on several prior occasions. Although the right to parent is fundamental, the context of the agreed entry and the relevant testimony concerning the "no contact" arrangement make clear that the relevant language was included at Father's direction.

{¶ 15} To be precise, Father was required to do more than simply provide a general reason for his failure to communicate. He was required to show that his stated reason was supported by "justifiable cause." While Father's general reason for failure to communicate may be the existence of the agreed entry, until the date stepfather made the adoption petition, the undisputed testimony was that Father sought the "no contact" provision and never made any effort to modify that arrangement. Agreeing to such an arrangement was certainly not justifiable, nor was it in the children's best interest.

{¶ 16} In sum, the Ohio Legislature included provisions specifying instances in which consent is not required in an adoption matter, and this is one of those cases. At his direction, Father memorialized the "no contact" intentions in the agreed entry. He cannot now rely on that agreement when the evidence shows that he has not contacted, attempted to contact, or even sought to remove the "no contact" provision in the agreed entry prior to the adoption petition.

{¶ 17} Since the existence of either an unjustified failure to communicate or failure to support allows a probate court to act without that parent's permission, we need not address Father's alternative argument concerning his failure to support his children.[2] As a result, we

---

2. However, we do note that Father does not have an arrearage in child support, and in fact has shown that there is a surplus of funds with no information on how those funds are to be allocated. Although that issue is immaterial based on our resolution of Father's failure to communicate, we would not find that Father failed to financially support the children.

find Father's sole assignment of error is without merit and overruled.

**{¶ 18}** Judgment affirmed.

RINGLAND and HENDRICKSON, JJ., concur.