[Cite as *In re Adoption of E.G.C.*, 2022-Ohio-2381.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

|   |   |   |
|---|---|---|
| IN RE: | : | |
| THE ADOPTION OF E.G.C. | : | CASE NO. CA2022-03-008 |
| | : | O P I N I O N<br>7/11/2022 |
| | : | |
| | : | |
| | : | |

APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. 20195020

Smith, Meier & Webb, LPA, and Andrew P. Meier and Chase T. Kirby, for appellant.

Peterson Law Office, and Shaun D. Peterson, for appellee.

**PIPER, P.J.**

{¶1}    Appellant, the biological father of E.G.C. ("Father"), appeals the decision of the Clinton County Court of Common Pleas, Probate Division, finding that his consent was not required in the adoption of E.G.C. by her stepfather ("Stepfather").

{¶2}    This case has previously been before this court.  *In re E.G.C.*, 12th Dist. Clinton No. CA2020-09-014, 2021-Ohio-276 ("*E.G.C. I*"); *In re E.G.C.*, 12th Dist. Clinton

No. CA2021-07-022, 2021-Ohio-4178 ("*E.G.C. II*"). The factual background of the case remains the same as in the first two appeals.

{¶3} The child was born in 2012 and lived with her mother ("Mother") and Father, who as a couple did not marry. When the child was approximately 18 months old, Mother moved out of the residence she and Father shared. Thereafter, Father maintained visitation with the child, including alternating weekends and some weekdays. Father married S.T. ("Wife") in April 2016, which marriage lasted six months.

{¶4} Father saw the child for the last time in 2017. From that point on, Father did not send any letters, cards, or presents to the child, and Father did not visit her. At some point Father moved to Pennsylvania where he remained for at least a year before moving back to Clinton County.

{¶5} The record reveals that in 2017, Mother became uncomfortable with allowing Father to see the child unless supervised because Wife told Mother that Father had engaged in inappropriate conduct with the child such as taking showers naked with her and Father watching "daddy/daughter porn."

{¶6} Mother married Stepfather in June 2018. Approximately one year later, Stepfather filed a stepparent adoption petition in the probate court. Stepfather alleged that Father's consent was not required because Father had not seen the child in more than one year. The probate court held a hearing to determine whether Father's consent was necessary for the adoption. The probate court subsequently issued an entry deciding that Father's consent to Stepfather's adoption of the child was not necessary because Father had only de minimis contact with the child in the year prior to the filing of the petition. However, the probate court did not determine whether the lack of contact was justifiable as required by statute. As such, this court remanded the matter for the probate court to address whether there was justifiable cause for Father's de minimis contact with E.G.C. in

the relevant time period. *E.G.C. I*, 2021-Ohio-276 at ¶ 30.

{¶7} During the pendency of the proceedings on remand, Clinton County Children Services filed an amended report regarding Stepfather's adoption petition. Originally, the agency recommended approval of Stepfather as an adoptive parent. However, the agency filed an amendment to the report noting that it could no longer recommend approval of Stepfather because he had previously been convicted of a drug-related felony. Upon receiving the amended report, the probate court summarily dismissed Stepfather's petition without a hearing and without first complying with this court's remand instructions to determine whether Father's de minimis contact with E.G.C. was justifiable. *E.G.C. II*, 2021-Ohio-4178 at ¶ 7.

{¶8} This court reversed the probate court's decision, concluding the probate court did not follow the proper statutory steps. Accordingly, we again remanded the case for the probate court to determine whether Father's de minimis contact with the child was justifiable. *Id.* at ¶ 19.

{¶9} Upon remand, the probate court found that Father's consent was not necessary, as Father's contact with the child in the year preceding the complaint was de minimis and without justifiable cause. In so doing, the probate court found:

> In this case, while Mother blocked Father from her social media account, there were a number of other alternatives available for Father to attempt to contact the child. Father admitted that he drove by Mother's residence, but did not stop and attempt to contact the child because it "looked like" no one was home. Father could have texted Mother and requested to see the child. Father could have filed a complaint with the Court seeking parenting time, etc. (Father did file a complaint for parenting time after the petition was filed and that matter is currently on hold pending the outcome of the adoption proceedings). Father stated he purchased gifts and attempted to contact the child, but the evidence presented reflected attempts after the petition was filed.

Father now appeals, raising a single assignment of error for review:

{¶10} THE TRIAL COURT ERRED IN FINDING [FATHER'S] CONSENT IS NOT NECESSARY FOR THE ADOPTION OF E.G.C.

{¶11} In his sole assignment of error, Father argues the probate court erred by finding Father's consent to adoption was unnecessary as provided in R.C. 3107.07(A).

{¶12} The right of natural parents to the care and custody of their child is one of the most precious and fundamental in law. *In re C.M.F.*, 12th Dist. Butler Nos. CA2013-06-090 and CA2013-06-091, 2013-Ohio-4719, ¶ 8. An adoption permanently terminates those parental rights of a natural parent. *In re L.C.W.*, 12th Dist. Butler No. CA2014-08-169, 2015-Ohio-61, ¶ 10. Thus, Ohio law requires parental consent to an adoption unless a specific statutory exception exists. *In re C.E.S.*, 12th Dist. Butler Nos. CA2020-07-069 thru CA2020-07-071, 2020-Ohio-6902, ¶ 19. "[A]ny exception to the requirement of parental consent to adoption must be strictly construed so as to protect the right of natural parents to raise and nurture their children." *In re B.N.S.*, 12th Dist. Butler Nos. CA2020-03-034 thru CA2020-03-036, 2020-Ohio-4413, ¶ 27.

{¶13} As determined in the first appeal, the relevant exception is based upon R.C. 3107.07(A), wherein consent to an adoption is not required upon a finding by clear and convincing evidence that the biological "parent has failed without justifiable cause to provide more than de minimis contact with the minor * * * for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner." *E.G.C. I*, 2021-Ohio-276 at ¶ 22.

{¶14} Ohio law is clear that in order to find R.C. 3107.07(A) applicable and that consent is not required, the probate court must engage in a two-step analysis. *In re J.F.M.*, 12th Dist. Butler No. CA2016-03-044, 2016-Ohio-4823, ¶ 11. As relevant to the case sub judice, the probate court must first determine whether the parent failed to engage in more than de minimis contact with the minor. *Id.* Second, the probate court must determine

whether the parent had "justifiable cause" for the failure to contact the minor. *Id.*

{¶15} This court has already determined Father has not provided more than de minimis contact with E.G.C. for at least one year immediately preceding the filing of the adoption petition. *E.G.C. I* at ¶ 24. Therefore, the issue determined below is whether Father's de minimis contacts were without "justifiable cause."

{¶16} A probate court's determination concerning justifiable cause "will not be disturbed on appeal unless such determination is against the manifest weight of the evidence." *In re A.L.S.*, 12th Dist. Butler No. CA2017-09-146, 2018-Ohio-507, ¶ 17. "In determining whether a judgment is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that there must be a reversal of the judgment and an order for a new trial." *In re L.C.W.*, 2015-Ohio-61 at ¶ 14. In so doing, we must be mindful the probate court "is in the best position to observe the demeanor of the parties and assess the credibility and accuracy of the testimony." *A.L.S.* at ¶ 17.

{¶17} On appeal, Father claims that he had justifiable cause because Mother significantly interfered with his contact with E.G.C. In so doing, he argues that Mother withheld E.G.C. from him and refused communication. He alleges Mother blocked him and his family on Facebook, and refused to answer her phone or provide an updated phone number. He also alleges that Mother rejected presents for the child and changed her address without telling him or his family.

{¶18} Based on our review of the evidence, we agree with the decision of the probate court that Father's de minimis contacts were without justifiable cause. In this case, the record reflects Father left Ohio and stopped visiting with E.G.C. in 2017. Father testified

that he left the state because "had a lot of things going on" with his family. He also stopped communicating with E.G.C. Father places great significance on the fact that Mother "blocked" him and his family on Facebook. Father testified that over the years, he had tried to contact Mother about E.G.C. through Facebook, but was unsuccessful. However, evidence that Mother blocked Father and other family members on Facebook does not mean that Mother blocked all means of communication or substantially interfered with his right to contact E.G.C. There is no requirement that Mother maintain a Facebook account, much less grant Father access to her personal profile. As the trial court correctly found, Father had a number of alternatives at his disposal if he wanted to communicate with E.G.C. Mother testified that she has had the same phone number for over five years. There is no evidence that Mother attempted to conceal her whereabouts and Father did not provide any meaningful explanation for why he could not locate Mother and E.G.C.'s more recent address. Furthermore, Father could have filed a complaint with the juvenile court requesting parenting time. However, Father did none of those things. As the evidence reflects, Father showed a complete lack of interest in E.G.C. until Stepfather filed his petition for adoption. Accordingly, there was no justifiable cause to warrant Father's actions. The probate court did not err in finding that Father's consent for the adoption was not necessary. Father's sole assignment of error is overruled.

{¶19} Judgment affirmed.

S. POWELL and BYRNE, JJ., concur.